UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  JAMES JONES | : | Chapter 7 |
| Debtor | : | Bky. No. 20-13163 ELF |
| | : | |
| AILEEN K. SCROGGINS, | : | |
| Plaintiff | : | |
| | : | |
| JAMES JONES, | : | |
| Defendant | : | Adv. No. 20-260 |

# M E M O R A N D U M

## I. INTRODUCTION

In this adversary proceeding, Aileen K. Scroggins ("Ms. Scroggins"), seeks a determination that a judgment entered in the Court of Common Pleas, Philadelphia County against Debtor James Jones ("the Debtor"), surcharging the Debtor in the amount of $42,354.98 (plus prejudgment interest) for breach of his fiduciary duty is nondischargeable under 11 U.S.C. §523(a)(4).

Ms. Scroggins has filed a Motion for Summary Judgment ("the Motion") to which the Debtor responded. In the Motion, Ms. Scroggins relies on the application of issue preclusion to establish her claim under §523(a)(4).[1]

---

[1] In the Complaint, Ms. Scroggins also asserted a claim for nondischargeability under 11 U.S.C. §523(a)(6).  The Motion did not address the §523(a)(6) claim.

1

The Debtor does not dispute application of issue preclusion, but rather contends that an element of the nondischargeability claim under 11 U.S.C. §523(a)(4) cannot be established through issue preclusion — specifically, the scienter requirement.

For the reasons that follow, I conclude that Ms. Scroggins has established all the elements for a determination of nondischargeability under 11 U.S.C. §523(a)(4). The Motion will be granted. An order will be entered determining that state surcharge is nondischargeable.

## II. PROCEDURAL HISTORY

The Debtor filed the present bankruptcy case on July 29, 2020.

Ms. Scroggins initiated this adversary matter by filing a complaint on October 30, 2020, requesting the court declare the surcharge nondischargeable. The Debtor timely filed an answer on December 2, 2020.

Ms. Scroggins filed the Motion on April 20, 2021 to which the Debtor timely responded on May 21, 2021. The parties were permitted time to file replies, the last of which was filed on June 18, 2021.

## III. FACTS

The following facts are not in dispute.

### A. The Power Of Attorney

Ms. Scroggins is presently 89 years old. (Adv. Doc. 15-2, Pl.'s Stmt. of Material Undisputed Facts at ¶ 1) (hereafter "Undisputed Facts").[2] She has been unable to live fully

---

[2] Ms. Scroggins's Statement of Undisputed Facts is supported by citations to the summary judgment evidentiary record. For simplicity, I will cite to the Statement of Undisputed Facts. Many of the documents referenced there were attached to a Declaration filed by Matthew E. Kaslow ("the Kaslow Decl.").

2

independent for quite some time, requiring assistance with basic tasks. Prior to 2006, Ms. Scroggins' sister handled her affairs, including financial matters and grocery shopping. After her sister passed away in 2006, Ms. Scroggins needed help managing aspects of her day-to-day life. (Id. at ¶¶ , 4, 5).

The Debtor met Ms. Scroggins in the early 1990's through the church where he served as a deacon. (Id. at ¶ 2). After learning of the passing of Ms. Scroggins sister, the Debtor began to assist her with her daily needs. (Id. at ¶¶ 6, 7). The Debtor ultimately obtained a Power of Attorney ("the POA"), executed by the parties on November 15, 2006. (Compl., Ex. A). The Debtor's powers under the POA included the power to:

1. make withdrawals from and deposits into any of Ms. Scroggins's bank accounts;
2. open and close such accounts in her name;
3. endorse and negotiate checks payable to Ms. Scroggins;
4. receive statements or documents in her name;
5. generally handle all banking matters; and
6. add and remove contents from any safe deposit boxes leased by Ms. Scroggins.

(Id).

By executing the POA, the Debtor expressly affirmed that he had "read" the document and "acknowledge[d]" his duties as agent thereunder. These duties included all the duties "explained more fully" in title 20, chapter 56 of the Pennsylvania Consolidated Statutes, as well as the duties listed in the four (4) straightforward, unambiguous lines of text appearing immediately above his signature:

> I shall exercise [my] powers for the benefit of [Ms. Scroggins].
>
> I shall keep the assets of [Ms. Scroggins] separate from my assets.

> I shall exercise reasonable caution and prudence.
>
> **I shall keep a full and accurate record of all actions, receipts and disbursements on behalf of [Ms. Scroggins]**.

(Id.) (emphasis added).

The Debtor served as agent and fiduciary to Ms. Scroggins under the POA for over ten (10) years — from approximately November 2006 to May 2017. (Undisputed Facts ¶ 15).

On May 16, 2017, Ms. Scroggins executed a new power of attorney, revoking the Debtor's powers as her agent. (Id. at ¶ 27; Kaslow Decl., Ex. G). Ms. Scroggins executed the new agreement because she believed that the Debtor had been misusing her money for at least six (6) years.[3] During those six (6) years, from 2010 to 2016, Ms. Scroggins' total account balance became depleted to the point that she was unable to afford an assisted living facility when it became necessary for her care. (Undisputed Facts ¶¶ 23-26).

### B. The State Court Decree

On January 17, 2019, Ms. Scroggins filed a "Petition for Citation to Show Cause Why Agent Should Not Be Directed to File Accounts Pursuant to 20 Pa. C.S.A. § 5610" in the Orphans' Court Division of the Court of Common Pleas, Philadelphia County,. (Id. at ¶ 28). The Debtor filed a response and an accounting from November 16, 2006 to December 31, 2016 ("the Accounting"). (Pl.'s Stmt of Material Undisputed Facts at ¶¶ 29, 30, 31). Ms. Scroggins filed objections and requested that the Debtor be surcharged for a breach of fiduciary duty and for interest at the legal rate. (Id. at ¶ 34).

---

[3] Ms. Scroggins's bank statements only go back to 2010. Thus, there is no record of the Debtor's conduct between 2006 and 2010.

On June 30, 2020, following a two (2) day bench trial, the state court entered a decree ("the Decree") in which it found that the Debtor failed to exercise common prudence, skill, and caution in the performance of his fiduciary duties to Ms. Scroggins. (Id. ¶¶ 37, 39).

The state court found, inter alia, that the Debtor,

1. failed to act in good faith, to keep Ms. Scroggins' funds separate from his own, and to keep full and complete records of receipts, disbursements, and transactions made on her behalf as required by 20 Pa. C.S.A. §5601.3(a) and (b);

2. produced no documents or receipts showing that he used Ms. Scroggins' funds for her benefit; and

3. failed to produce a record of actual responsibilities he assumed and performed entitling him to compensation.

(Undisputed Facts ¶ 41; Kaslow Decl., Ex. E).

The state court surcharged the Debtor in the amount of $42,354.98 for the losses resulting from the Debtor's failure to fulfill his fiduciary responsibilities, itemized as follows:

- $15,000 paid by the Debtor to himself as compensation;

- $9,525 in accounts labeled as "moving, cleaning fees, and deposits for Scroggins;"

- $2,000 for "transportation;"

- $5,000 allegedly paid to Germantown Nursing Home;

- $1,400 paid to Ms. Ulett for cleaning and Assistance moving;

- $1,929.98 for checks sent to the Debtor which he failed to place in Scroggins' account;

- $5,900 for the $100 per month the Debtor testifies to have taken as compensation; and

- $1,600 for checks the Debtor made out to himself.

(Undisputed Facts ¶¶ 16, 41, 42, 43; Kaslow Decl., Ex. E).

5

Subsequently, on September 14, 2020, the court amended the Decree to add pre-judgment interest of $8,894.55, bringing the surcharge up to $51,249.53, and providing for post-judgment interest to run at 6% per annum. (Kaslow Decl., Ex. E).[4]

Debtor has not paid the surcharge. (Undisputed Facts ¶ 44).

### III. LEGAL STANDARDS

#### A. Summary Judgment

The legal standard for the entry of summary judgment under Fed. R. Civ. P. 56, incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056, has been adequately set forth in a prior reported decision:

> Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *E.g., Tri–M Group, LLC v. Sharp,* 638 F.3d 406, 415 (3d Cir. 2011); *In re Bath,* 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In other words, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248, 106 S. Ct. 2505. In evaluating the record, the court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Montone v. City of Jersey City,* 709 F.3d 181, 189 (3d Cir. 2013); *United States v. 717 South Woodward St.,* 2 F.3d 529, 533 (3d Cir. 1993). On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the

---

[4]  I note that the state court's September 14, 2020 order was entered after the automatic stay was in place, the Debtor having filed this bankruptcy case on July 29, 2020. However, Ms. Scroggins is entitled to post-judgment interest as a matter of law, and the pre-judgment interest calculation was a ministerial act. See Iehle v. Coleman, 584 A.2d 988, 991 n.5 (Pa. Super. 1991) (computing pre-judgment interest is a ministerial act). Therefore, I will adopt the state court's calculations.

court should enter judgment in that party's favor. *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505.

Proper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens.

As a threshold matter, the moving party's initial burden is to demonstrate that there are no disputed issues of material fact. *E.g., U.S. v. Donovan,* 661 F.3d 174, 185 (3d Cir. 2011); *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080 (3d Cir. 1996); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir. 1987). How the movant meets this burden and how the respondent may rebut the movant's showing is affected by the allocation of the evidentiary burden of persuasion if the dispute were to proceed to trial.

If the moving party bears the burden of proof, the movant must "support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick,* 2 F.3d at 1115 (citation omitted). The evidence must establish "all the essential elements of its case on which it bears the burden of proof at trial, [such that] no reasonable jury could find for the non-moving party." *Id.* (citation omitted); *see also Bath,* 442 B.R. at 387. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 247–50, 106 S. Ct. 2505.

In re Polichuk, 506 B.R. 405, 420-21 (Bankr. E.D. Pa. 2014) (emphasis in the original).

In this adversary proceeding, Ms. Scroggins bears the burden of proof on her nondischargeability claim under 11 U.S.C. §523(a)(4). For Ms. Scroggins to prevail on her Motion for Summary Judgment, the evidence must establish the absence of any disputed issue of material fact on each of the elements of §523(a)(4), and that she is entitled to judgment as a matter of law.

### B. Dischargeability

### 1.

One of the Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs and obtain a "fresh start," unburdened by the weight of preexisting debt. See In

7

re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995); In re Marques, 358 B.R. 188, 193 (Bankr. E.D. Pa. 2006). Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors. E.g., Cohn, 54 F.3d at 1113; In re Glunk, 455 B.R. 399, 415 (Bankr. E.D. Pa. 2011).

A creditor objecting to the dischargeability of a debt bears the burden of proof. Cohn, 54 F.3d at 1113; In re Stamou, 2009 WL 1025161, *3 (Bankr. D.N.J. Mar. 19, 2009); In re Marcet, 352 B.R. 462, 468 (Bankr. N.D. Ill. 2006). The creditor must establish the elements under §523(a) by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291 (1991); In re August, 448 B.R. 331, 357 (Bankr. E.D. Pa. 2010).

**2.**

Section 523(a)(4) precludes from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). Embezzlement and larceny are not at issue in this adversary proceeding. Ms. Scroggins limits her nondischargeability claim to the fiduciary prong of §523(a)(4).

To prevail under the fiduciary prong, Ms. Scroggins first must prove that the Debtor was acting in a fiduciary capacity. Once the threshold fiduciary relationship has been established, she must then prove fraud or defalcation.

The parties have significantly narrowed the issues. Not surprisingly, considering the nature of the underlying relationship between the parties, the Debtor does not dispute that he was acting in a fiduciary capacity when he served as Ms. Scroggins' agent under the POA.[5]

---

[5] The definition of "acting in a fiduciary capacity" under state law is not necessarily the same as the bankruptcy definition of the term. See, e.g., In re Bayer, 521 B.R. 491, 505 (Bankr. E.D. Pa. 2014). Had the Debtor not conceded he was acting in a fiduciary capacity within the meaning of 11 U.S.C. §523(a)(4), it would have been necessary to determine whether a fiduciary relationship existed within the meaning of 11 U.S.C. §523(a)(4).

Likewise, Ms. Scroggins does not assert that the Debtor's conduct rose to the level of fraud. Thus, the only issue in this proceeding is whether the surcharge in the Decree was the result of the Debtor's defalcation within the meaning of §523(a)(4).

Defalcation under §523(a)(4) is a "failure to account for funds entrusted to a fiduciary." In re Pearl, 502 B.R. 429, 440 (Bankr. E.D. Pa. 2013) (quoting In re Roemmele, 2011 WL 4804833, at *5 (Bankr. E.D. Pa. 2011)). Defalcation under §523(a)(4) requires a heightened level of scienter involving either intentionally wrongful conduct or recklessness. Pearl, 502 B.R. at 432 (citing Bullock v. BankChampaign, N.A., 569 U.S. 267, 274 (2013)).

To support determination of nondischargeable defalcation under §523(a)(4), a debtor's conduct must either (1) "involve bad faith, moral turpitude, or other immoral conduct;" or (2) must have been "reckless," i.e., involving a conscious disregard or a willful blindness to a substantial and unjustifiable risk that the conduct violated the debtor's fiduciary duty. Pearl, 502 B.R. at 432. Reckless conduct under §523(a)(4) is not merely simple, or even inexcusable negligence; it must represent but an extreme departure from the standards of ordinary care that is either known to the defendant or is so obvious that the defendant must have been aware of it. Id. at 441–42 (quotation and citation omitted).

### C. Issue Preclusion

**1.**

The doctrine of collateral estoppel, also known as "issue preclusion," is applicable in nondischargeability proceedings under 11 U.S.C. §523(a). Grogan, 498 U.S. at 285.

In employing the doctrine in this case, I must apply Pennsylvania law.[6]

---

[6] The application of issue preclusion in a federal court action based on a prior state court judgment typically is grounded in the federal full faith and credit statute which provides that state judicial

Under Pennsylvania law, an issue is precluded from re-litigation when:

1. The issue is identical to one that was presented in a prior case;

2. There has been a final judgment on the merits of the issue in the prior case;

3. The party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;

4. The party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and

5. The determination in the prior proceeding was essential to the judgment.

Roemmele, 2011 WL 4804833, at *9-10.

The Debtor concedes that all of the elements for application of issue preclusion are present.[7]

---

proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738; accord Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985). Thus, in determining whether the doctrine bars relitigation of an issue previously determined by a state court, a federal court must apply state law to evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place. Swineford v. Snyder County PA, 15 F.3d 1258, 1266 (3d Cir. 1994) ("Federal courts must give a state court judgment the same preclusive effect as would the courts of that state"); see also In re Mickletz, 544 B.R. 804, 813–14 (Bankr. E.D. Pa. 2016).

[7] Considering the issue independently, I agree.

There is no question that elements two (2) through four (4) are satisfied here. The Decree was a final judgment on the merits, the Debtor was a party in that prior action, and the Debtor had a full and fair opportunity to litigate the issues presented.

As for the identity of issue requirement, as explained in Part IV. below, in applying the doctrine I am drawing primarily upon the state court's factual findings, not its legal conclusions. In other words, the material factual issues in both matters are identical.

Finally, in reviewing the state court decision, I conclude that its findings were essential to the judgment it entered.

10

**2.**

In In re Kates, 485 B.R. 86 (Bankr. E.D. Pa. 2012), I explained that two (2) methodologies are commonly employed by courts determining the preclusive scope of issues decided in a prior case. I labeled those methodologies the "deductive" approach and the "inductive" approach.

In the deductive approach, most commonly employed in cases in which the first court made no specific findings (such as a trial that culminated in a jury verdict)

> . . . the bankruptcy court starts with the ultimate conclusions of the first court (which usually are not in dispute)—for example, that the court entered judgment in the creditor's favor on a particular cause of action. The court next attempts to reconstruct inferentially the necessary foundations of the prior decision. If that reconstruction process is successful, the court then compares those foundational elements of the prior court ruling to the statutory elements of the § 523(a) nondischargeability asserted by the plaintiff. This reasoning process may involve a purely legal analysis, e.g., a comparison of the necessary elements of the claim litigated in the first proceeding with the elements of the bankruptcy nondischargeability claim. Or, the bankruptcy court may consider additional materials from the first proceeding, such as pleadings, briefs and jury instructions, in an effort to ascertain what issues were actually litigated before and necessarily decided by the prior court (and, if the issues were mixed fact-law questions, the legal standard employed by the court). If the court is able to determine that particular issues were actually and necessarily litigated in the prior proceeding—be they fact issues or mixed fact-law issues—and concludes that they are identical to the issues in the bankruptcy proceeding, then relitigation of those issues will be precluded.

Id. at 102.

The second methodology, the inductive approach, is

> usually employed when the prior tribunal made express findings of fact and conclusions of law, distinct from the process described above . . . . By dropping down one level and focusing on the specific findings (particularly, findings of historical fact) in the prior proceeding that are entitled to preclusive effect, under the inductive approach, the court evaluates whether the preclusive facts, considered in the aggregate, establish any or all of the elements of a § 523(a) claim.

Id. at 103 (citations omitted).

Regardless which approach is employed, the court must also consider other issues such as whether the burdens of proof or the substantive legal standards in the bankruptcy proceeding differ from those of the prior proceeding, who prevailed in the earlier matter, and which party in the bankruptcy proceeding seeks to invoke the issue preclusion doctrine.

Here, the underlying state court proceeding employed the same burden of proof as applies in this adversary proceeding: a preponderance of evidence. Compare In re Estate of Nicely, 2003 WL 22183940, at *5 (C.P. Phila. Cty. Orphans' Ct. Div. Apr. 1, 2003) (stating that the burden of proof in surcharge actions is a preponderance of evidence), and In re Estate of Kelsey, 1992 WL 1071382 (C.P. Phila. Cty. Orphans' Ct. Div. Apr. 6, 1992), with Cohn, 54 F.3d at 1113.

In this case, the state court made certain factual findings that are preclusive. Employing the inductive approach, I am able to determine, from the preclusive facts, that all of the elements for nondischargeability under 11 U.S.C. §523(a)(4) have been satisfied.

### IV. THE SURCHARGE IMPOSED BY THE STATE COURT DECREE IS NONDISCHARGEABLE

#### A. Introduction

There is no dispute that the Debtor failed to account for the funds Ms. Scroggins entrusted to him. There also is no dispute that: the Debtor was a fiduciary within the meaning of 11 U.S.C. §523(a)(4), that the Debtor's failed to perform his fiduciary duties to Ms. Scroggins and as a result of the Debtor conduct, Ms. Scroggins suffered losses totaling $42,354.98. These facts were determined preclusively by the state court. Thus, the sole remaining issue is whether the facts stated in the Decree permit a determination that the Debtor had the requisite scienter —

12

intentionally wrongful conduct or recklessness — required for a determination of nondischargeability based on defalcation under §523(a)(4).

As explained below, I conclude that the Debtor acted recklessly, as described the Supreme Court in Bullock, thereby fulfilling this final requirement under §523(a)(4).

### B. The Debtor's Conduct Was Reckless

As stated earlier, a debt arising from a fiduciary's reckless conduct that results in a failure to account for the beneficiary's assets is nondischargeable under 11 U.S.C. §523(a)(4). Bullock, 569 U.S. at 274.

"Recklessness" is a concept that falls between "mere negligence" and "a specific intent to injure" under §523(a)(4). Pearl, 502 B.R. at 441. The determination is a "hybrid of the subjective and objective" because the court must first consider the debtor's actual knowledge and circumstances (subjective) and then decide whether the related conduct constituted a gross deviation from legal standards of conduct (objective). Id. Here, I find both components of recklessness are present.

Debtor suggests that the surcharge imposed by the Decree was the result of his negligence or his "mis-feasance and non-feasance and not the result any malfeasance." I disagree.

I begin by considering the subjective aspect of the recklessness determination under §523(a)(4).

The Debtor appears to fall in the category of what the Supreme Court termed "nonprofessional trustees." Bullock, 569 U.S. at 276. Despite his lack of sophistication or experience with trustee duties under Pennsylvania law, however, the Debtor had more than

adequate knowledge of his fiduciary duties. The record keeping duty is neither arcane nor complicated. In fact, one might consider it to be obvious; and the power of attorney document itself informed the Debtor that his fiduciary duties required him to keep a full and accurate record of all receipts and disbursements on behalf of Ms. Scroggins.

Here, after failing to keep a full and accurate record of all receipts and disbursements on behalf of Ms. Scroggins, the Debtor has not come forward with any evidence to suggest that there was any impediment or any extenuating circumstances that might provide a partial justification for his total failure to fulfill this fiduciary responsibility. Had the Debtor presented some extenuating explanation, the purported justification would not change his liability under Pennsylvania law, but it might have provided grounds to find that he acted neither intentionally nor recklessly within the meaning of §523(a)(4). But, in his response to the Motion, the Debtor did not offer any evidence. Thus, nothing in the record provides a factual basis that would mitigate the Debtor's conduct based on the Debtor's subjective experience as Ms. Scroggins's fiduciary.

As for the objective component of recklessness under §523(a)(4), I conclude that a reasonable factfinder necessarily would find that the Debtor's conduct was a gross deviation from the required standard of conduct that went far beyond mere negligence, rising to the level of recklessness.[8]

The state court found the Debtor breached his duties to keep the funds separate and to keep record of all receipts, disbursements, and transactions made on behalf of Ms. Scroggins. In

---

[8]     A scienter finding generally is not suitable for disposition on summary judgment because it is a question of fact. See In re Kilmartin, 508 B.R. 35, 42 (Bankr. W.D. Ky. 2014). But, when the evidence is so one sided that reasonable minds could not differ as to the only rational outcome the factual issue of intent can be decided by the court as a matter of law. Mickletz, 544 B.R. at 818 (quotation and citation omitted). I find this to be such a case.

14

fact, the state court found that he *maintained no records at all* to demonstrate that he used Ms. Scroggins' funds for her benefit. This was a gross deviation from the Debtor's duties as a fiduciary.

Perhaps the determination that the Debtor's conduct was objectively reckless might have been a closer call if the Debtor maintained at least some records, but lacked others, or if the Debtor had a temporary lapse in accounting for his expenditures. But, instead, he completely disregarded his duties. This rises to the level of a "conscious disregard" or "willful blindness" to his responsibilities, as described by the Supreme Court, sufficient to establish nondischargeability under Section 523(a)(4). See Bullock, 569 U.S. at 274.[9]

### V. CONCLUSION

This case bears a close resemblance to my earlier decision in Pearl. There, I found a debt nondischargeable under §523(a)(4) based on the debtor's reckless conduct.

In Pearl, the debtor served as her mother's financial guardian and depleted her accounts. The debtor wrote checks out to cash for herself, engaged in transactions that unduly benefited herself, comingled assets, and did little to track the flow of estate money because she did not maintain adequate records. I found this conduct to be "an extreme departure from the negligence

---

[9] The record arguably supports a finding of defalcation under §523(a)(4) based on the higher scienter level: intentionally wrongful conduct. The Debtor's use of Ms. Scroggins's money to pay himself substantial sums might support an inferential finding that he acted immorally and in bad faith, described in Bullock, sufficient to satisfy the scienter requirement of §523(a)(4).

Of the $42,354.98 the Debtor was surcharged, nearly $23,000.00 is attributable for compensation he paid to himself. Considering that the Debtor submitted his Accounting without any documentary support for only six (6) years of the ten (10) year period he served as Ms. Scroggins's fiduciary, quite possibly, he took considerably money for himself over the entire period of his "service."

To be clear, however I do not reach base my determination of nondischargeability on this ground.
.

15

standard to which fiduciaries are held, and bordered on out-and-out self-dealing." Pearl, 502 B.R. at 447.

The case presented here is no different.

For these reasons, I will enter an order determining that the surcharge debt imposed by the state court is nondischargeable under 11 U.S.C. §523(a)(4).

Date: January 20, 2022

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**